NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
EVEREST NATIONAL INSURANCE :
COMPANY and EVEREST REINSURANCE :
COMPANY :
:
       Plaintiffs,      :     Civil Action No. 07-1236 (JAP)
:
     v.            :     **OPINION**
:
ROBERT E. SUTTON, ROLAND G. :
ANDERSON, MICHAEL T. MITCHELL, :
JOHN T. SCHREVEN, :
:
       Defendants. :
_____:

PISANO, District Judge.

Plaintiffs Everest National Insurance Company and Everest Reinsurance Company (together "Everest" or "Plaintiff") brought this action against Robert E. Sutton ("Sutton"), Roland G. Anderson ("Anderson"), Michael T. Mitchell ("Mitchell"), and John T. Schreven ("Schreven") (together the "Individual Defendants") for fraud and civil conspiracy. Currently before the Court is Defendant Mitchell's Motion to Dismiss, or in the Alternative, to Transfer Venue. For the reasons set forth below, Mitchell's motion is denied.

**I. BACKGROUND**

This action arises out of a business relationship between Everest and Centrix Financial, LLC ("Centrix Financial"). At all relevant times, Centrix Financial, which filed for Chapter 11 bankruptcy protection in September 2006, was engaged in the business of underwriting and servicing sub-prime automobile loans. Beginning in 2003, Everest provided Default Protection

Insurance ("DPI") for the automobiles purchased with a loan from Centrix Financial. In the event that a borrower defaulted on the loan, DPI would cover the difference, if any, between the blue book value of the collateral at the time of default and the amount due on the loan. At all times relevant to this action, Defendant Mitchell was the Chief Financial Officer of Centrix Financial.

On March 14, 2007, Everest filed a Complaint asserting claims for fraud and civil conspiracy against the Individual Defendants. In support of its fraud claim, Everest alleges, *inter alia*, that the Individual Defendants willfully and intentionally: (1) provided false information designed to induce Everest to issue insurance coverage; (2) failed to disclose the existence of other policies provided by other insurance carriers; (3) failed to disclose a self-dealing arrangement between Centrix Financial and another insurance carrier; and (4) misrepresented and/or failed to disclose certain claims information. (Compl. ¶ 83). In its claim for civil conspiracy, Everest alleges that the Individual Defendants had a "conscious commitment" to engage in a common scheme or plan to defraud Plaintiff. (*Id.* ¶ 90).

Defendant Mitchell now moves for dismissal, or in the alternative, transfer of this action to the United States District Court for the District of Colorado. According to Mitchell, the Court must dismiss the claims against him because: (1) this Court does not have personal jurisdiction over him; and (2) even if Mitchell is subject to personal jurisdiction in the District of New Jersey, the allegations against him do not satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). Alternatively, Mitchell argues that the Court should transfer this action to the District of Colorado pursuant to 28 U.S.C. § 1406 or 28 U.S.C. § 1404.

Before reaching the merits of Mitchell's motion, the Court notes that there is a related

breach of contract action pending in this Court, *Everest National Insurance Company et al. v. Robert Sutton et al.*, Civil Acton No. 07-722.  Although the two actions are not identical, both arise out of the business relationship between Everest and Centrix Financial and they share a similar procedural history.  On January 30, 2007, Everest requested that Sutton deposit $76,262,632.00 into a trust account in accordance with the terms of a Personal Guaranty that the parties had previously negotiated in connection with a reinsurance arrangement.  Sutton objected to that request and filed suit in a Colorado state court seeking a declaratory judgment that the Personal Guaranty was null and void and that he was under no obligation to make the deposit that Everest demanded.  Everest later removed the action to the District of Colorado based on diversity jurisdiction.

On February 7, 2007, before Sutton served Everest with the Complaint, Everest filed suit in this Court against Sutton and several corporate entities (together the "Corporate Defendants").  Everest asserted a single claim for breach of contract against the Corporate Defendants for failure to fulfill their obligations under the Personal Guaranty.  Everest then filed the instant fraud action against the Individual Defendants on March 14, 2007.  Shortly thereafter, the parties engaged in a competing motion practice wherein (1) the Corporate Defendants asked this Court to apply the first-filed rule and dismiss, stay, or transfer the action against them to the District of Colorado; (2) Everest submitted a motion to the District of Colorado seeking a determination that first-filed rule did not apply and that the breach of contract action belonged in the District of New Jersey; and (3) Defendants Sutton, Anderson, and Schreven submitted a motion to this Court seeking, *inter alia*, dismissal of the fraud claim under Rule 9(b), or in the alternative, stay or transfer of the action under the first-filed rule.

On August 23, 2007, a court in the District of Colorado issued an order stating that the first-filed rule does not apply to Sutton's declaratory judgment action because he filed his Complaint in anticipation of Everest's suit for breach of contract.  *See Sutton v. Everest Nat'l Ins. Co.*, No. 07-425 (D. Colo. Aug. 23, 2007) (order dismissing first-filed action).  In light of that ruling, this Court issued an order dated August 27, 2007 denying the Corporate Defendants' transfer request as moot.  *Everest Nat'l Ins. Co. v. Sutton*, No. 07-722 (D.N.J. Aug. 27, 2007) (denying motion to transfer).  In a separate order, the Court denied the Individual Defendants' motion, finding that (1) Everest's allegations of fraud satisfy Rule 9(b)'s heightened pleading requirement; and (2) the first-filed rule argument is moot as well.  *Everest Nat'l Ins. Co. v. Sutton*, No. 07-722 (D.N.J. Aug. 27, 2007) (denying motion to dismiss, stay, or transfer).  As a result of that order, Mitchell's Rule 9(b) argument is now moot.  As the order explains, the Court, having reviewed the fraud allegations, the parties' arguments and the relevant caselaw, is satisfied that the fraud allegations in Everest's Complaint contain sufficient particularity.  *Id.*

Two issues remain, however.  First, the Court must determine whether Mitchell is subject to personal jurisdiction in the District of New Jersey.  Second, to the extent that this Court has personal jurisdiction over Mitchell, the Court must determine whether the case should be transferred to the District of Colorado pursuant to either 28 U.S.C. § 1406 or 28 U.S.C. § 1404.

## II. DISCUSSION

### A. This Court Has Personal Jurisdiction over Mitchell

"[C]ourts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."  *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).  "[O]nce

the defendant raises the question of personal jurisdiction," however, "the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction."  *Id.* at 146.

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state."  *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987); *see also* Fed. R. Civ. P. 4(e).  The New Jersey long-arm rule, New Jersey Court Rule 4:4-4(c), "extends to the limits of the Fourteenth Amendment Due Process [Clause] protection."  *Carteret Sav. Bank*, 954 F.2d at 145.  In accordance with that protection, a court may exercise personal jurisdiction over a nonresident defendant if that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted).

Whether sufficient minimum contacts exist to assert personal jurisdiction depends upon the "nature of the interactions and type of jurisdiction asserted."  *Telcordia Tech, Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006).  For instance, where the cause of action "does not arise out of or relate to the [defendant]'s activities in the forum state," but the defendant has "continuous and systematic" contacts with the forum state sufficient to confer personal jurisdiction, a court is said to exercise general jurisdiction over the defendant.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 & n.9 (1984).  On the other hand, a court exercises specific jurisdiction when the defendant has limited contacts with the forum state but the suit against him arises out of or relates to those contacts.  *Id.* at 414 n.8.  Regardless of whether a plaintiff asserts personal jurisdiction under the general or specific jurisdiction theory, a

plaintiff must demonstrate that the defendant "has purposefully directed its activities toward the residents of the forum state, . . . or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The Court notes, however, that "physical presence in the forum is no longer a prerequisite for personal jurisdiction." *George Young Co. v. Bury Bros., Inc.*, No. 03-3353, 2004 WL 1173129, at *4 (E.D. Pa. Apr. 2, 2004).

A third concept under which a court may find that personal jurisdiction exists is the "effects test" established in *Calder v. Jones*, 465 U.S. 783, 789 (1984). Under the effects test, "a court may exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum." *IMO Indus., Inc.*, 155 F.3d at 261. Under the law of this Circuit, the effects test requires a plaintiff to demonstrate that:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to the be the focal point of the tortious activity.

*Id.* at 265-66. A plaintiff's mere assertion "that the defendant knew that the plaintiff's principal place of business was located in the forum [is] insufficient" to satisfy the third prong of the test. *Id.* at 265.

Everest concedes that Mitchell does not have the type of systematic and continuous contacts with New Jersey to support a finding that he is subject to general personal jurisdiction in

this forum. Everest contends, however, that Mitchell is subject to personal jurisdiction under the specific jurisdiction theory, the effects test, and the conspiracy theory of personal jurisdiction. The Court finds, by a preponderance of the evidence, that Mitchell visited Everest's offices in New Jersey on one occasion to discuss matters relating to this litigation and was in frequent contact with Everest representatives in New Jersey. The Court further finds that Mitchell, who was responsible for managing Centrix Financial's books and records, regularly provided Everest with allegedly false and misleading information about Centrix Financial's loans, claims data, financial status and activities, and other insurance policies—all of which relate directly to the alleged fraud. (*See* Declaration of Gary McKinnon at Exs. A-L).

Thus, contrary to Mitchell's argument, the exercise of personal jurisdiction over him in this forum does not rest upon a single email. Indeed, Mitchell's frequent contact with Everest representatives in New Jersey, his trip to Everest's offices in New Jersey, his submission to Everest of numerous allegedly fraudulent documents and records, and his alleged participation in scheme designed to defraud Everest demonstrate that he reached out to New Jersey. In the Court's view, this allegedly intentional and tortious conduct is a sufficient basis for the exercise of personal jurisdiction over Mitchell. *See Lebel v. Everglades Marina*, 115 N.J. 317, 326 (1989) ("Where a defendant knowingly sends into a state a false statement, intending that it should be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state."); *Wright v. Xerox Corp.*, 882 F. Supp. 399, 404-05 (D.N.J. 1995) ("Courts have recognized the special importance of intentional, tortious acts in assessing whether personal jurisdiction over a non-resident defendants is reasonable.").

Mitchell cites *Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 184 (3d Cir. 2000) for

the proposition that jurisdiction over a defendant does not exist simply because he is the agent or employee of an organization which presumably is amenable to jurisdiction in this Court. Although this Court does not question that point of law, Mitchell's reliance on *Nicholas* is misplaced. Everest does not contend that this Court may exercise personal jurisdiction over Mitchell merely because he was an employee of a business entity that is subject to suit in this forum. Nor does Everest ask the Court to impute the contacts of Centrix Financial to Mitchell. Instead, unlike the plaintiff in *Nicholas*, Everest alleges that Mitchell had personal contact with the form via a business trip, emails, telephone calls, and other correspondence that relates directly to the alleged fraud. Thus, Mitchell may not rely on the corporate shield to defend against the exercise of personal jurisdiction. *See Norben Import Corp. v. Metro. Plant & Flower Corp.*, No. 05-54, 2005 WL 1677479, at *5 (D.N.J. July 15, 2005) ("If a corporate officer has personally engaged in activity for which individual liability may attach, then the corporate shield may not be used to defend against personal jurisdiction.").

Moreover, the analysis in *Nicholas* does not touch upon the effects test. The effects test does not turn on the defendant's activities in the forum, but rather, whether the defendant directed his activities at the forum and whether the plaintiff felt the brunt of the harm in the forum state. According to Everest's allegations, Mitchell intentionally committed and conspired to commit fraud against Everest, Everest felt of the brunt of the harm, if not all of it, in New Jersey, and Mitchell and the other Individual Defendants directed their fraudulent activities at Everest in New Jersey. Thus, even if Mitchell's contacts were insufficient to confer specific personal jurisdiction, the Court finds he is subject to personal jurisdiction in this forum under the effects test. In short, considering the nature and quality of Mitchell's contacts with the forum,

the Courts finds that subjecting him to suit in this forum would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (quotation omitted).

### B. The District of New Jersey Is A Proper Venue for this Dispute

Next, Mitchell argues that the District of New Jersey is not the proper venue for this lawsuit and that the action should be transferred pursuant either to 28 U.S.C. § 1406 or 28 U.S.C. § 1404. Section 1406 applies where venue is improper and, in such cases, mandates dismissal, or in the interests of justice, transfer to another federal court. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Thus, in order to determine whether § 1406 applies, the Court must analyze whether the District of New Jersey is a proper venue for this action. The burden of proving that venue is improper rests with the movant. *Eason v. Linden Avionics, Inc.*, 706 F. Supp. 311, 324 (D.N.J. 1989).

> In cases where jurisdiction is premised on diversity of citizenship, venue is proper in
>
> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). The parties agree that subsections (a)(1) and (a)(3) do not apply in this case. To determine whether venue is proper under subsection (a)(2), courts consider three factors: "(1) the place of injury; (2) the weight of contacts; and (3) whether a substantial part of the events giving rise to the claim occurred in the district." *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 516 (D.N.J. 1998).

Although Mitchell concedes that the alleged injury took place in New Jersey where

9

Everest is located, he argues that the other two factors demonstrate that the District of New Jersey is not a proper venue for this action. Defendant contends that the weight of his contacts with New Jersey is insufficient to establish venue in this Court because "the majority of the conduct underlying this suit took place in Colorado." (Def's Br. at 14). Even if the majority of the events underlying Plaintiff's Complaint occurred in Colorado, however, that does not preclude this Court from finding that the District of New Jersey is a proper forum for this dispute. *See Park Inn Int'l LLC v. Mody Enterprises, Inc.*, 105 F. Supp. 2d 370, 376 (D.N.J. 2000) ("The statute only requires a substantial part of the events to have occurred in the District to establish venue. It does not require a majority of the events to take place here, nor that the challenged forum be the best forum for the lawsuit to be venued.").

     As explained above, however, Mitchell had significant contacts with New Jersey through his dealings with Everest and his alleged participation in the fraud. Moreover, Plaintiff's Complaint avers that the other defendants in the action, Mitchell's alleged co-conspirators, have had significant contact with the forum and engaged in a substantial part of the allegedly illegal conduct while in New Jersey. Thus, in the Court's view, Everest's Complaint alleges that a substantial part of the events at issue occurred in New Jersey and, thus, the Court finds that the District of New Jersey is a proper forum for this dispute.

     ***C. Transfer of this Case to the District of Colorado Is Not Appropriate***

     Having concluded that venue is proper in this district, the Court now turns to Mitchell's request that the case be transferred to the District of Colorado pursuant to 28 U.S.C. § 1404(a). "Section 1404(a) authorizes a district court to transfer a case to any other district where venue is proper '[f]or the convenience of parties and witnesses, in the interests of justice . . . .'" *Kedia v.*

*Jamal*, No. 06-6054, 2007 WL 1239202, at *4 (D.N.J. Apr. 25, 2007) (quoting 28 U.S.C. § 1404(a)).  In a motion for transfer under § 1404(a), "the burden is on the moving party to show the proposed alternative forum is not only adequate, but also more appropriate than the present forum."  *Hoffer v. Infospace.com, Inc.*, 102 F. Supp. 2d 556, 572 (D.N.J. 2000).  The moving party "must submit sufficient information in the record to facilitate the appropriate analysis and to meet its burden of persuasion."  *Id.*  When deciding a motion to transfer, courts give "[s]ubstantial weight and deference . . . to the plaintiff's choice of forum."  *Burke v. Quartey*, 969 F. Supp. 921, 928 (D.N.J. 1997).

As an initial matter, the parties do not dispute that the District of Colorado is a proper forum for this action.  Therefore, whether transfer is proper in the case turns upon the convenience of the parties and witnesses, and the interests of justice.  The United States Court of Appeals for the Third Circuit has promulgated a list of both private and public interests that are relevant to the transfer inquiry.  *Jumara*, 55 F.3d at 879.  Among the private interests are:  the plaintiff's forum preference, the defendant's forum preference, whether the claim arose in another forum, the convenience of the parties, the convenience of witnesses (to the extent they may be unavailable for trial in one of the fora), and the location of books, records and other evidence, but only to the extent that the evidence could not be produced in one of the fora.  *Id.*  The public interests include:  the enforceability of the judgement, practical considerations relating to the logistics and costs associated with trial, court congestion in the two fora, the local interest in deciding local disputes at home, the public policies of the fora, and the trial judge's familiarity with the applicable state law in diversity cases.  *Id.* at 879-80.

Mitchell, who focuses solely on the private interests, argues that the case should be

transferred to Colorado because the evidence, defendants and witnesses are all located there. Further, Mitchell notes that much of the alleged conduct underlying Plaintiff's claims took place in Colorado and argues the existence of a related suit in that forum involving many of the same parties makes Colorado the most appropriate forum for practical reasons. In the Court's view, Mitchell's argument suffers from a number of flaws.

First, though it is true that all of the defendants reside in Colorado and would prefer a Colorado forum, Plaintiff is a New Jersey corporation and has demonstrated a preference for a New Jersey forum. Considering the weight afforded to the plaintiff's choice of forum, *see Burke*, 969 F. Supp. at 928, this factor does not weigh in favor of transfer. Second, that much of the evidence is located in Colorado does not bolster Mitchell's transfer argument because he has not established, or even alleged, that the evidence could not be produced in this forum. Third, although the Court shares Mitchell's availability and convenience concerns insofar as there are fact witnesses who currently reside in Colorado, Mitchell has not even estimated the number of potential non-party fact witnesses that would be unavailable for trial in this forum. Thus, any weight that the Court would afford to availability concerns is completely speculative. Further, transferring the case to the District of Colorado would raise the same convenience and availability concerns for all non-party fact witnesses currently residing in New Jersey. Fourth, though much of the alleged fraudulent conduct took place in Colorado, the claim arose in New Jersey where Everest's injury occurred.

Having evaluated the relevant private interest factors, the Court finds that Mitchell has not met his burden of showing that the District of Colorado is "more appropriate than the present forum." *Hoffer*, 102 F. Supp. 2d at 572. Nor has he presented any arguments that overcome the

"[s]ubstantial weight and deference [that] is given the plaintiff's choice of forum." *Burke*, 969 F. Supp. at 928.  Moreover, the Court finds that none of public interest factors weigh in favor of transferring this action from the District of New Jersey to the District of Colorado.  Accordingly, the Court denies Mitchell's request for transfer.

### III.  CONCLUSION

For the reasons expressed above, the Court denies Defendant's Motion to Dismiss, or in the Alternative, to Transfer Venue.  An appropriate order accompanies this opinion.


/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  September 4, 2007

13